IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES P. LANCE | ) | Case No. 5:19-cv-1888 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## I.    Introduction

Plaintiff, James P. Lance, seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b).  Because substantial evidence supports the ALJ's decision that Lance was not under a disability through the date last insured and because Lance has failed to identify any misapplication of legal standards, I recommend that the Commissioner's final decision denying Lance's application for DIB be AFFIRMED.

## II.     Procedural History

Lance protectively applied for DIB on November 16, 2012.  (Tr. 189).[1]  He alleged that

he became disabled on July 30, 2010 due to "diabetic, hip injury, labera [sic] tear r[ight] hip,

plantar fibromatosis – both feet, chronic pain, arches well and has had lumps removed."  (Tr.

189, 252).  The Social Security Administration denied Lance's applications initially and upon

reconsideration.  (Tr. 84-94, 96-106).  Lance requested an administrative hearing.  (Tr. 128).

ALJ Christine Hilleren heard Lance's case and denied the claim in an August 12, 2015, decision.

(Tr. 714-726).  After the Appeals Council denied review, Lance appealed the decision to the

United States District Court.

On April 27, 2018, this court remanded the case because the Commissioner's RFC

determination was not supported by substantial evidence.  (Tr. 737-768).  Another administrative

hearing was held on March 27, 2019 by ALJ Amanda Knapp.  (Tr. 663-713).  ALJ Knapp issued

an unfavorable decision on June 5, 2019.  (Tr. 639-654).  On August 20, 2019, Lance filed a

complaint seeking judicial review of the Commissioner's 2019 decision.  ECF Doc. 1.

## III.     Evidence

### A.     Relevant Medical Evidence

Because Lance's sole assignment of error focuses on the ALJ's handling of the opinions

of treating source Susan Dominic, M.D., I will concentrate my review of the medical evidence

upon her records and records relating to Lance's ability to carry.

In 2008, Lance underwent surgeries to excise masses (fibromas) from both feet.  (Tr. 337,

342, 355).  In April 2009, Lance reported that his right foot was much improved after the

---

[1] The administrative transcript is in ECF Doc. 10.

surgery, but he could not stand on his left foot for prolonged periods due to a new fibroma causing pain.  (Tr. 422).  Lance was treated by Dr. Tarek Elsawy during this time.  Dr. Elsawy noted that Lance suffered from significant pain in his feet.  He diagnosed peripheral neuropathy, adult-onset diabetes, and plantar fibroma.  (Tr. 426-436).

Lance began treating with Dr. Susan Dominic in June 2012.  (Tr. 630).  Lance reported constant pain and diabetic neuropathy, specific to how much time he spent on his feet.  He had not sought any care for one and a half to two years.  January 2012 laboratory testing showed increasing hemoglobin A1c levels.  (Tr. 630).  Physical examination showed decreased vibratory sensation in his right foot.  (Tr. 633).  In August 2012, Lance's hemoglobin A1c levels had worsened.  (Tr. 463)  He also reported severe foot pain and had an antalgic gait.  (Tr. 482).

In September 2012, Dr. Dominic referred Lance to Dr. Paramjeet Gill.  Lance reported pain in his both hips, worse on the right, for the past six months.  (Tr. 439).  X-rays showed some early arthritic changes developing at the femoral head/neck junction, as well as some ossification of the labrum.  An MRI showed "some possible labral tearing."  (Tr. 440, 454, 458).  There was also evidence of some cam impingement and evidence of significant chondral loss developing in his right hip.  Dr. Gill recommended activity modification, use of anti-inflammatories, and use of potential intraarticular corticosteroid injections.  (Tr. 440).

In November 2012, Lance reported that Celebrex and Neurontin "maybe" helped his feet a little, but made no difference with his hip pain.  (Tr. 478).  His treatment plan included a handicap parking pass and making application for disability.  (Tr. 479).

In December 2012, Lance's hemoglobin A1c levels were poorly controlled.  (Tr. 471).  He reported constant hip pain.  He had a marked limp while walking, antalgic to the right side.

(Tr. 476).  In February 2013, he had some decreased sensation to vibration in his right foot.  (Tr. 475).  He received counseling for diabetes.  (Tr. 472).

In January 2013, Lance had reduced range of motion, positive stress and impingement testing and tenderness in his hips.  (Tr. 447-448).  Dr. Mark Safran, M.D., noted that Lance's July 2012 MRI showed a labral tear in the right hip, but virtually no osteoarthritis per x-ray.  (Tr. 448-454).  He recommended physical therapy twice per week for two months.  (Tr. 448).

In October 2013, Lance reported that he had been doing a poor job of controlling his blood sugar for the past few months due to family-related issues.  (Tr. 517).

In June 2014, Lance reported doing aerobic workouts, which increased his feet and hip pain, but improved his diabetic numbers.  Examination showed decreased bilateral sensation.  (Tr. 572).  In July 2014, Dr. Paul Norwood noted that Lance's control of diabetes had been very good but hat he had worsening diabetic neuropathy.  He was achieving great pain control with Dr. Dominic.  (Tr. 538-539).

On October 15, 2014, Lance saw Dr. Victoria Walton for his diabetes and peripheral neuropathy.  (Tr. 526-527).  An EMG showed significant generalized peripheral neuropathy.  A week later, Dr. Dominic discussed with Lance that he would be limited to sedentary jobs due to his feet and hip pain.  (Tr. 561).  His diabetes was well controlled that month.  (Tr. 562).

On December 3, 2014, Lance continued to complain of feet and hip pain.  Physical examination did not show any abnormalities and his HgA1c level improved.  (Tr. 558).  In January 2015, Lance's diabetic control was noted as "fair," but he continued to have decreased sensation in his feet.  (Tr. 546).

In March 2015, Lance told Dr. Dominic that his pain levels were not good, but a lot of his pain was being blocked and was under control.  He reported that being on his feet for prolonged periods increased the pain (Tr. 555) and that Lyrica seemed to be helping.  (Tr. 553).

**B.  Relevant Opinion Evidence**

As with my review of the medical evidence, I will concentrate my description of the opinion evidence upon the various medical sources' statements concerning Lance's ability to carry.  A full description of the treating source opinion of Susan Dominic, M.D. follows.

**1.  Treating Physician – Susan Dominic, M.D.**

On April 2, 2015, Dr. Dominic completed an assessment of Lance's ability to do work-related activities.  (Tr. 529-535).  Dr. Dominic opined that Lance was limited to lifting/carrying up to 20 pounds occasionally due to his peripheral neuropathy and plantar fibromatosis.  She reported that he had severe pain with standing and walking because of his impairments.  She opined that he could sit for two hours at a time, could only stand for a total of one hour and could only walk for a total of 30-45 minutes.  (Tr. 531).  She noted that Lance was sometimes required to use a cane because he had an antalgic gait due to the pain in his right hip from the labral tear.

Dr. Dominic opined that Lance was limited to frequent manipulation and bilateral reaching due to his progressing peripheral neuropathy.  He was precluded from operating foot controls, balancing, crouching, crawling, exposure to unprotected heights, moving parts, pulmonary irritants, extreme temperatures and vibrations.  (Tr. 532-534).  Finally, she opined that the medications he was taking caused sedation and limited his mental acuity.  As a result, he needed to avoid operating heavy equipment and attending to paperwork that was detailed and required prolonged concentration.  (Tr. 535).

5

### 2.    Consulting Examiner – Roger Wagner, M.D.

On April 10, 2013, Lance underwent a comprehensive internal medicine evaluation with Roger Wagner, M.D.  Lance reported toe numbness and right foot pain.  He reported that his feet had improved significantly after fibroma surgery, but he had pain with walking or standing and could not move his fourth or fifth toes on his left foot.  (Tr. 504-505).  Lance reported cooking, cleaning, driving, shopping and performing his own activities of daily living without assistance. Dr. Wagner observed Lance walking briskly and getting on and off the examination table easily, but very slowly bending over at the waist to take off his socks and shoes.  (Tr. 505).  He had normal gait and station and was able to walk on his heals and toes.  (Tr. 506).  His left foot was minimally tender, but Dr. Wagner did not detect any fibromatoses.  (Tr. 507).  Lance had right hip discomfort, but his strength, sensation and deep tendon reflexes were normal in the upper and lower extremities.  (Tr. 507).

Dr. Wagner noted that Lance did not appear to have any end-organ damages from diabetes, other than perhaps some early neuropathy.  He diagnosed right hip pain and noted that Lance had some discomfort when he walked long distances.  (Tr. 507).  Dr. Wagner opined that Lance could stand and walk up to six hours;  could lift and carry up to 50 pounds occasionally and 25 pounds frequently; and could climb no more than frequently.  (Tr. 508).

### 3.    State Agency Consultants

On April 25, 2013, state agency reviewing consultant, Jonathan Norcross, M.D., reviewed Lance's medical records and opined that he could lift up to 25 pounds frequently.  (Tr. 91).  On November 20, 2013, state agency reviewing consultant, A. Nasrabadi, M.D., reviewed Lance's medical records and agreed with Dr. Norcross's opinions.  (Tr. 103-104).

### C.      Relevant Testimonial Evidence

Lance testified at the ALJ hearing.  (Tr. 668-).  He had completed high school, had military training and had taken some community college courses.  He lived with his 13 year old daughter and 9 year old son.  He had a driver's license and was able to drive.  (Tr. 669).

Lance testified that he was unable to work due to pain in his feet and other pain resulting from walking so to avoid feet pain.  (Tr. 673-674).  Lance underwent surgeries in 2008 to remove fibromatosis from his feet.  (Tr. 675).  The surgeries changed, but did not eliminate, his pain.  (Tr. 676).  He had three different types of pain: pain from diabetic neuropathy, pain from the fibromatosis, and pain resulting from the surgeries.  (Tr. 679).  He also had pain in his hip during the disability period.  (Tr. 696).

During the disability period, Lance had small children and his wife had cancer.  He had to care for his children, his wife and household necessities, but he tried to do as little as possible so as not to exacerbate his neuropathic pain.  (Tr. 682-690).

Vocational Expert ("VE") Gene Burkhammer also testified at the hearing.  (Tr. 671-672, 698-712).  The VE testified that there were a significant number of jobs that an individual with Lance's RFC, as determined by the ALJ, would be able to perform.  (Tr. 647, 700-707).  The VE testified that missing more than two days of work per month would be work preclusive and that employers would tolerate up to 15% of "off task" behavior.  (Tr. 707-708).

## IV.    The ALJ Decision

The ALJ made the following paraphrased findings relevant to this appeal:

2. Lance had the severe impairments of osteoarthritis right hip with possible labral tear, plantar fibromatosis bilateral feet, diabetes mellitus with peripheral neuropathy, and obesity.  (Tr. 644).

5. Lance had the residual functional capacity to perform sedentary work, except he could sit no longer than two hours at a time and needed to alternate to a

standing position for up to two minutes after 30 minutes of sitting, while remaining at the work station and on task.  He could stand for up to one hour in an 8-hour workday but he could walk no longer than 30 minutes at a time.  He could occasionally lift or carry up to 20 pounds, occasionally lift or carry up to 10 pounds, and frequently lift or carry less than 10 pounds.  He could never operate foot controls with his bilateral lower extremities.  He could occasionally climb ramps or stairs, but could never climb ladders, ropes or scaffolds.  He could occasionally stoop or kneel, but could never balance, crouch or crawl.  He could occasionally operate a motor vehicle.  He must avoid even moderate exposure to humidity and wetness.  He must avoid all exposure to extreme temperatures, vibrations and workplace hazards such as unprotected heights and moving mechanical parts.  He can perform simple, routine task.  (Tr. 647).

10. Considering his age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy that Lance could perform, through the date last insured. (Tr. 653).

Based on all these findings, the ALJ determined that Lance was not under a disability from July 30, 2010 through the date of his decision.  (Tr. 654).

## V.      Law & Analysis

### A.      Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied.  42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion.  *Rogers*, 486 F.3d at 241; *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) ("Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  If

supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion.  42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek*, 880 F.3d at 783 ("It is not our role to try the case *de novo*." (quotation omitted)).  This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless.  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error.").  Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting Sarchet v. Charter, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D.

Ohio July 9, 2010).  Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).  Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that he is disabled and, thus, entitled to benefits.  20 C.F.R. §§ 404.1512(a), 416.912(a).

### B.    Treating Physician Rule[2]

#### 1.    2019 Decision

Lance argues that the ALJ failed to follow the treating physician rule by not assigning controlling weight to the opinions of Dr. Dominic and by failing to provide good reasons for the limited weight assigned to portions of Dr. Dominic's opinion.  At Step Four, the Commissioner must weigh every medical opinion that the Social Security Administration receives.  20 C.F.R. §§ 404.1527(c), 416.927(c).  An ALJ must give a treating physician's opinion controlling weight, unless the they articulate good reasons for discrediting that opinion.  *Gayheart v.*

---

[2] 20 CFR §§ 416.927 applies to Lance's claim because it was filed before March 27, 2017.

*Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  Good reasons for giving a treating

source's opinion less-than-controlling weight include: (1) a lack of support by medically

acceptable clinical and laboratory diagnostic techniques; (2) inconsistency with or contradictory

findings in the treating source's own records; and (3) inconsistency with other substantial

evidence in the case record.  *See Biestek*, 880 F.3d at 786 ("An ALJ is *required* to give

controlling weight to a treating physician's opinion, so long as that opinion is supported by

clinical and laboratory diagnostic evidence [and] not inconsistent with other substantial evidence

in the record." (citing 20 C.F.R. § 404.1527(c)(2))); *Gayheart*, 710 F.3d 365, 376; *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (stating that good reasons include

that: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence

supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or

inconsistent with the doctor's own medical records.").  But inconsistency with nontreating or

nonexamining physicians' opinions alone is not a good reason for rejecting a treating physician's

opinion.  *See Gayheart*, 710 F.3d at 377 (stating that the treating physician rule would have no

practical force if nontreating or nonexamining physicians' opinions were sufficient to reject a

treating physician's opinion).

    If an ALJ does not give a treating physician's opinion controlling weight, the ALJ must

weigh the opinion based on: the length and frequency of treatment, the supportability of the

opinion, the consistency of the opinion with the record as a whole, whether the treating physician

is a specialist, the physician's understanding of the disability program and its evidentiary

requirements, the physician's familiarity with other information in the record, and other factors

that might be brought to the ALJ's attention.  *See Gayheart*, 710 F.3d at 376; 20 C.F.R.

§§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  Nothing in the regulations requires the ALJ to explain

how he considered each of the factors.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Biestek*, 880 F.3d at 786 ("The ALJ need not perform an exhaustive, step-by-step analysis of each factor."). However, the ALJ must at least provide good reasons for the ultimate weight assigned to the opinion.  *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011) (acknowledging that, to safeguard a claimant's procedural rights and permit meaningful review, 20 C.F.R. §§ 404.1527(c) and 416.927(c) require the ALJ to articulate good reasons for the ultimate weight given to a medical opinion).  When the ALJ fails to adequately explain the weight given to a treating physician's opinion, or otherwise fails to provide good reasons for the weight given to a treating physician's opinion, remand is appropriate.  *Cole*, 661 F.3d at 939; *see also Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that the failure to identify good reasons affecting the weight given to an opinion "'denotes a lack of substantial evidence, even whe[n] the conclusion of the ALJ may be justified based upon the record.'"  (citing *Rogers*, 486 F.3d at 243)).

After summarizing Dr. Dominic's assessment of Lance's impairments (Tr. 651), the ALJ assigned partial weight to her opinion, explaining:

> As a general matter, the undersigned gives partial weight to Dr. Dominic's opinion for a reduced range of sedentary work, giving strong weight to some limitations and little weight to others.  Strong weight is given to the opinion that the claimant could sit for eight hours with breaks to relieve pain from constant flexion of his hip, and could more specifically sit for eight hours in a day and two hours at a time, stand for one hour per day and for 30 minutes at a time, and walk for 30-45 minutes in a day and for 15-30 minutes at a time.  These limitations were addressed in the above residual functional capacity, which provides that he can sit no longer than two hours at one time, and must be permitted to alternate to a standing position for up to two minutes after 30 minutes of sitting, and further provides for standing up to an hour but no more than 30 minutes at a time, and walking for up to 45 minutes but no more than 30 minutes at a time.
>
> Strong weight is also given to Dr. Dominic's opinion that the claimant could lift or carry up to 10 pounds and up to 20 pounds on an occasional basis.  She did not make any findings as to what weight, if any, claimant could lift or carry on a frequent basis.  While it has been argued that the lack of a specific finding to this effect is equivalent to a finding that claimant could not lift any weight on a

frequent basis, such a finding is not consistent with the opinion given, and is inconsistent with the medical records (with generally normal upper extremity exams) and claimant's own statements regarding activities of daily living that include caring for two small children and a terminally ill spouse, shopping, doing laundry, and cooking.  Instead, the medical records and testimony support a finding that the claimant was capable of lifting or carrying less than 10 pounds on a frequent basis, as is generally provided in jobs of sedentary exertion.

Little weight is given to Dr. Dominic's opinion that the claimant would need a cane "sometimes."  The opinion is vague as to the duration of any required use, and is further tempered by Dr. Dominic's opinion that the claimant could ambulate without a cane for 60 feet.  Further, any required use of a cane would be overly restrictive in light of the medical evidence and claimant's own testimony, which demonstrated differences in observed gait and numerous instances where claimant ambulated and performed activities of daily living without a cane.

Little weight is also given to Dr. Dominic's opinion that the claimant could frequently reach, handle, finger and feel, and occasionally push or pull with her bilateral upper extremities.  These limitations are inconsistent with normal physical exams and medical records demonstrating few or no limitations in the claimant's use of his upper extremities.  Indeed, the support offered by peripheral neuropathy "likely to progress to involve his hands" in the future, while she acknowledged that "there are minimal restrictions in [claimant's] ability to use and manipulate his upper extremities" at present (Ex. 17F, 4).  The objective findings in the medical records do not support a conclusion that claimant's impairments require additional limitations in his use of his upper extremities, beyond the lifting and carrying limitations identified above.

(Tr. 651-652).

Lance argues that the ALJ incorrectly interpreted Dr. Lance's opinion regarding his ability to lift and carry. Dr. Dominic completed a questionnaire regarding Lance's ability to lift and carry as follows:

| **Lift** | Never | Occasionally (up to 1/3) | Frequently (1/3 to 2/3) | Continuously (over 2/3) |
|---|---|---|---|---|
| A. Up to 10 lbs: | | **X** | | |
| B. 11 to 20 lbs: | | **X** | | |
| C. 21 to 50 lbs: | | | | |
| D. 51 to 100 lbs: | **X** | | | |

| **Carry** | Never | Occasionally (up to 1/3) | Frequently (1/3 to 2/3) | Continuously (over 2/3) |
|---|---|---|---|---|
| A. Up to 10 lbs: | | X | | |
| B. 11 to 20 lbs: | | X | | |
| C. 21 to 50 lbs: | X | | | |
| D. 51 to 100 lbs: | X | | | |

(Tr. 530).   The ALJ acknowledged that Dr. Dominic had not checked any boxes regarding

Lance's ability to frequently lift and carry, and she acknowledged Lance's argument that the

opinion must be interpreted to indicate that Lance could not carry or lift *any* amount of weight on

a frequent basis.  However, the ALJ logically rejected such an interpretation because it was not

consistent with Dr. Dominic's opinion or the medical records showing generally normal upper

extremity exams.  (Tr. 651).  The ALJ also noted that Lance's own statements of activities of

daily living included caring for two small children and a terminally ill spouse, shopping, doing

laundry and cooking.  The ALJ was permitted to consider Lance's statements regarding his daily

activities when assessing how his impairments affected his RFC.  Relevant evidence includes a

claimant's medical history, medical signs, laboratory findings, and statements about how the

symptoms affect the claimant.  20 C.F.R. §§ 404.1529(a), 416.929(a); *see also* SSR 96-8p, 1996

SSR LEXIS 5.

Further, most of the support for Dr. Dominic's opinions relate to the condition of Lance's

lower extremities.  She noted that he had a right labral tear which limited his ability to flex his

hip and bend over or pick things up.  She also noted that his ability to carry was limited by his

severe diabetic peripheral neuropathy and his painful foot lesions.  (Tr. 530).  The medical record

shows that Lance's peripheral neuropathy mostly affected his feet.  And this was consistent with Lance's testimony.  He did not mention any problems with his hands or arms.  (Tr. 673-690). Lance has not cited any record evidence demonstrating that he was unable to frequently lift less than 10 pounds.  Lance's cited evidence relates mostly to his lower extremities and his ability to walk and stand.  ECF Doc. 11 at 9-10.  His argument relies on his own interpretation of Dr. Dominic's opinion questionnaire.  But given the entire record, the ALJ's finding that Lance could frequently carry less than 10 pounds was an appropriate and logical interpretation of Dr. Dominic's opinion.

Lance argues that the ALJ did not cite any evidence supporting her finding that he was capable of carrying and lifting less than 10 pounds on a frequent basis.  However, the ALJ cited Dr. Dominic's treatment notes stating that Lance could perform sedentary work. (Tr. 650, 562). That, by definition, indicated Lance's ability to frequently lift and carry up to 10 pounds.[3]  20 CFR 404.1567(a),  The ALJ also cited Dr. Dominic's opinion that Lance had minimal restrictions in his ability to use and manipulate his upper extremities.  (Tr. 652, 532).  She cited Dr. Wagner's consultative examination which showed that Lance had normal strength and sensation in both his upper and lower extremities.  (Tr. 650).  Lance correctly argues that inconsistency with nontreating or nonexamining physicians' opinions – alone –  is not a good reason for rejecting a treating physician's opinion.  *See Gayheart*, 710 F.3d at 377.  However, it was not Dr. Dominic's inconsistency with Dr. Wagner's opinion *alone* that led to the ALJ's RFC determination.  As stated, ALJ Knapp also cited Dr. Dominic's treatment notes and opinions and Lance's testimony in support of her finding that he could frequently lift less than 10 pounds.  (Tr. 651-652).

---

[3] In fact, the ALJ's finding that Lance could frequently lift and carry "less than 10 pounds" was arguably a greater limitation than the "sedentary" work opinion expressed by Dr. Dominic.

The ALJ properly weighed Dr. Dominic's opinion and cited good reasons for the weight assigned to different portions of her opinion.  Substantial evidence supports the ALJ's RFC finding; and Lance has not shown any error in the ALJ's application of legal standards in this portion of her decision.

### 2.    2015 ALJ Decision

On April 27, 2018, this court remanded a 2015 ALJ decision previously issued on the same claim appealed by Lance in the present case.  (Tr. 737-769); *Lance v. Comm'r of Soc. Sec.,* No. 5:17-cv-855.  The prior ALJ's decision was vacated and remanded because she misstated Dr. Dominic's opinion as finding that Lance could frequently lift ten pounds and inadequately explained why Dr. Dominic's actual opinion was not incorporated into Lance's RFC. (Tr. 758-761).  The court also held that this error was not harmless because the prior VE had testified that if Lance could not lift any amount of weight frequently, he would not be able to perform any work.  (Tr. 747-748).   Because the ALJ had misstated Dr. Dominic's opinion and did not explain her apparent rejection of that opinion, the court remanded Lance's claim for further proceedings.

Not surprisingly, Lance focuses his current appeal on the same issue previously identified by this court.  Lance argues that ALJ Knapp also erred in rejecting Dr. Dominic's opinion that he could not frequently lift any amount of weight.  However, ALJ Knapp corrected the error identified in the prior ALJ's decision.  First, she did not misstate Dr. Dominic's opinion regarding Lance's ability to lift and carry.  Second, she provided good reasons for her interpretation of Dr. Dominic's opinion.  Third, she cited other portions of the record supporting her decision that Lance could frequently lift less than 10 pounds.  ALJ Knapp's RFC finding was not necessarily inconsistent with Dr. Dominic's opinion, and it appears to correlate with Dr.

Dominic's other statements that Lance could do sedentary jobs (Tr. 561), and that "there [were] minimal restrictions in [Lance's] ability to use and manipulate his upper extremities."  (Tr. 532). In summary, ALJ Knapp's decision did not contain the same errors as the prior ALJ's decision. As explained above, substantial evidence supported ALJ Knapp's decision that Lance was capable of performing a restricted level of sedentary work.  Lance has failed to show any error in the ALJ Knapp's application of legal standards.

## VI.    Recommendations

Because substantial evidence supports the ALJ's decision that Lance was not under a disability through the date last insured, and because Lance has failed to identify any misapplication of legal standards, I recommend that the Commissioner's final decision denying Lance's applications for DIB be AFFIRMED.

Dated: May 7, 2020

Thomas M. Parker
United States Magistrate Judge

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).